******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JUDITH KISSEL *v.* CENTER FOR WOMEN'S
HEALTH, P.C., ET AL.
(AC 42469)
(AC 42493)
(AC 42505)

Moll, Alexander and Norcott, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant acupuncturist,
W, and his employer, C Co., for injuries she suffered when a heat lamp
used during an acupuncture treatment burned her left foot and toes
due to W's alleged medical malpractice. The plaintiff attached to her
complaint a good faith certificate from her attorney but did not attach
a written and signed opinion letter from a similar health care provider.
C Co. filed a motion to dismiss the action on the ground that the plaintiff
failed to attach a written opinion letter from a similar health care pro-
vider as required by statute (§ 52-190a). Thereafter, W joined C Co.'s
motion to dismiss. Subsequently, the plaintiff filed a request to amend
her complaint to attach an opinion letter that she indicated had existed
at the time the complaint was originally filed but inadvertently was not
attached. The plaintiff also objected to the motions to dismiss and
claimed that the trial court had discretion to allow the amendment and
to deny the motions to dismiss because the opinion letter existed at the
time the action was commenced and was only inadvertently not attached
to the original complaint. The trial court denied the motions to dismiss
and overruled the objections to the plaintiff's request to amend. There-
after, the court granted W's motion to implead H Co., the distributor of
the heat lamp, as a third-party defendant. Subsequently, the plaintiff
filed an amended complaint to allege a product liability claim against
H Co. Following a trial, the jury returned a verdict in favor of the plaintiff
on the medical malpractice and product liability counts. Thereafter, the
court granted W's and C Co.'s motions for permission to file a second
motion for reconsideration of the denial of their motions to dismiss but
denied the requested relief, denied H Co.'s motions for a directed verdict
and to set aside the verdict, and rendered judgment in accordance with
the verdict. On separate appeals brought to this court by W, C Co., and
H Co., *held*:

1. The trial court improperly denied the motions to dismiss filed by W and
   C Co., the plaintiff having failed to attach a written opinion letter to
   her complaint as required by § 52-190a and having failed to cure that
   defect before the statute of limitations expired: this court's decision in
   *Peters* v. *United Community & Family Services, Inc.* (182 Conn. App.
   688), made clear that a plaintiff's efforts to cure a defective opinion
   letter must be initiated prior to the expiration of the statute of limitations,
   and the plaintiff did not seek to remedy her failure to attach the written
   opinion letter to her original complaint before the two year statute of
   limitations had expired, and, contrary to the plaintiff's argument, W and
   C Co. did not waive argument on the statute of limitations because they
   did not raise it in their 2012 motions to dismiss, as that argument was
   raised in their motions to reargue based on new, controlling case law;
   moreover, a jury verdict in a medical malpractice action does not insulate
   a defect in the required opinion letter from appellate review; further-
   more, because the plaintiff had knowledge on the date of the incident
   of the nature and extent of her injuries, she could not rely on the three
   year statute (§ 52-584) of repose, and, thus, pursuant to § 52-584, the
   action was subject to a two year statute of limitations.

2. The trial court properly denied H Co.'s motions for a directed verdict
   and to set aside the verdict; the plaintiff presented alternative bases
   of causation for her injuries, and, because there was a lack of jury
   interrogatories to specify which basis of causation the jury used to
   reach its verdict, H Co. was required to establish that the evidence was
   insufficient to support any of the specifications of causation pursued
   by the plaintiff, however, H Co. argued on appeal only that the plaintiff
   failed to establish how or why the heat lamp came into contact with

her foot and its failure to challenge the alternative bases of causation was fatal to its appeal.

Argued October 5, 2020—officially released June 29, 2021

*Procedural History*

Action to recover damages for medical malpractice, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, denied the defendants' motions to dismiss; thereafter, the court, *Mottolese, J.*, granted the motion of the defendant Reed Wang to implead Health Body World Supply, Inc., as a third-party defendant; subsequently, the plaintiff filed an amended complaint; thereafter, the matter was tried to the jury before *Hon. Kenneth B. Povodator*, judge trial referee; verdict for the plaintiff; subsequently, the court, *Hon. Kenneth B. Povodator*, judge trial referee, denied the defendants' postverdict motions and rendered judgment in accordance with the verdict, from which the defendants filed separate appeals to this court; thereafter, this court consolidated the appeals. *Affirmed in part; reversed in part; judgment directed.*

*Wesley W. Horton*, with whom were *Kenneth J. Bartschi* and, on the brief, *Mary Alice Moore Leonhardt*, for the appellant in Docket No. AC 42469 (defendant Reed Wang).

*David J. Robertson*, with whom was *Keith M. Blumenstock*, for the appellant in Docket No. AC 42493 (named defendant).

*Laura Pascale Zaino*, with whom were *Paul D. Meade* and, on the brief, *Logan A. Carducci*, for the appellant in Docket No. AC 42505 (defendant Health Body World Supply, Inc.).

*William M. Bloss*, with whom, on the brief, were *Alinor C. Sterling*, *Matthew S. Blumenthal*, *Sarah Steinfeld*, and *Sean K. McElligott*, for the appellee (plaintiff).

ALEXANDER, J. This trilogy of appeals originated when the plaintiff, Judith Kissel, sustained serious burns to her left foot during the course of an acupuncture treatment. The plaintiff commenced a medical malpractice action against the treating acupuncturist, Reed Wang, and his place of employment, the Center for Women's Health, P.C. (Center). The plaintiff subsequently filed a third-party complaint alleging a product liability claim against Health Body World Supply, Inc., also known as WABBO, the distributor of a device commonly referred to as the Miracle Lamp (heat lamp), which injured her. After a trial on both the medical malpractice and product liability claims, the jury returned a verdict for the plaintiff on all counts, awarding her a total of $1 million in damages. Following the resolution of various postverdict motions, the court rendered judgment in accordance with the jury's verdict.

Wang, the Center, and WABBO each filed a separate appeal, docketed as AC 42469, AC 42493, and AC 42505, respectively. In AC 42469 and AC 42493, Wang and the Center claim that (1) the trial court improperly denied their motions to dismiss the medical malpractice action for failing to comply with General Statutes § 52-190a because the plaintiff failed to attach to her initial complaint an opinion letter from a similar health care provider and her efforts to cure this defect occurred outside of the limitation period, (2) the court improperly denied the request for an evidentiary hearing with respect to the jurisdictional facts related to the opinion letter, (3) the plaintiff failed to present sufficient evidence with respect to causation, and (4) the court improperly instructed the jury regarding expert testimony and causation. In AC 42505, WABBO claims that the court improperly denied its motions for a directed verdict and to set aside the verdict because the plaintiff failed to present sufficient evidence as to the element of causation. The plaintiff maintains that the judgment of the trial court should be affirmed.

In AC 42469 and AC 42493, we agree with Wang and the Center that the court improperly denied their motions to dismiss the plaintiff's medical malpractice complaint as a result of her failure to attach the requisite opinion letter to the complaint and to cure this defect by the expiration of the statute of limitations.[1] In AC 42505, we conclude that the plaintiff presented sufficient evidence with respect to her product liability complaint. The court, therefore, properly denied WABBO's motions for a directed verdict and to set aside the verdict. Accordingly, we reverse the judgment with respect to Wang and the Center on the medical malpractice claims, and affirm the judgment with respect to the product liability claims.

The following recitation, as set forth by the court in its postverdict memorandum of decision,[2] summarizes the facts and procedural history and serves as a starting point to address the claims raised in these appeals. The plaintiff, a patient at the Center, went to Wang for her first acupuncture treatment on April 22, 2010. At this visit, Wang inserted needles in the plaintiff's body and placed the heat lamp[3] near her foot as part of the treatment. The surface temperature of this device, which was distributed by WABBO,[4] exceeded 500 degrees. As part of his standard practice, Wang left the plaintiff alone in the treatment room, but remained close by. "When . . . Wang returned to the room several minutes later, the head of the heat lamp was resting against the plaintiff's foot, having caused serious injuries to her foot. He removed the lamp from her foot, and he (and the principal of the Center) transported the plaintiff to a hospital for treatment."[5]

A significant issue at trial was the exact manner in which the head of the heat lamp, which housed the heating element, came into contact with the plaintiff's left foot. No one observed whether the head of the heat lamp had descended or whether the entire lamp assembly had tipped over.[6] The parties presented extensive evidence regarding the propensity of the head of the lamp to lower on its own or whether such movement was the result of some external force.

"The jury awarded the plaintiff $1 million as to each of the claim/theories of liability presented. With respect to the medical malpractice claim, the jury determined that the plaintiff was not comparatively negligent. With respect to the product liability claim, the jury determined that the plaintiff was not comparatively responsible for her injuries, but pursuant to General Statutes § 52-572o, the jury determined that . . . Wang, as a party to this action, had been 20 [percent] responsible. The plaintiff had not made any claim for economic damages, so the full award was for noneconomic damages." With this factual overview in mind, we now proceed to the specific claims raised in each of these appeals.

## I

## AC 42469 and AC 42493

In AC 42469 and AC 42493, Wang and the Center claim, inter alia, that the court improperly denied their motions to dismiss the plaintiff's medical malpractice complaint.[7] Specifically, Wang and the Center contend that the court lacked personal jurisdiction on the basis of the plaintiff's failure (1) to attach an opinion letter from a similar health care provider to her medical malpractice complaint and (2) to cure that defect within the applicable two year statutory limitation period. The plaintiff counters that the court properly denied the motions to dismiss the medical malpractice complaint.

She argues that Wang and the Center waived their statute of limitations defense and that the purpose of the statute was satisfied, as evidenced by the jury's verdict in the present case. The plaintiff contends that the three year statute of repose contained in General Statutes § 52-584 applied and, therefore, the amendment to the complaint containing the opinion letter was timely and cured the defect. We agree with Wang and the Center that the medical malpractice complaint should have been dismissed pursuant to § 52-190a (c) and that the plaintiff's efforts to cure the defect were not timely.

A detailed recitation of the facts and procedural history is necessary for the resolution of this claim.[8] The plaintiff's complaint was served on the Center on April 4, 2012, and on Wang on April 6, 2012. In her two count complaint, dated March 30, 2012, the plaintiff alleged that Wang, as "a servant, agent, apparent agent and/or employee of [the Center]" held himself out as a licensed acupuncturist in Connecticut.[9] She further alleged that she sustained injuries as a result of Wang's failure to exercise the degree and care of a licensed acupuncturist in the following ways: (1) failing to protect her from contact with the heat lamp during the acupuncture treatment; (2) failing to place the heat lamp at a safe distance during the treatment; (3) leaving her unattended during the acupuncture treatment and failing to respond promptly to the her cries for help while she was being burned; (4) failing to use a safe heating system during the acupuncture treatment; and (5) not caring for, treating, monitoring, diagnosing, and supervising her adequately and properly during the acupuncture treatment. As a result of this professional negligence, the plaintiff alleged a variety of injuries.[10]

The plaintiff's counsel attached a certification to the complaint indicating that he had made a reasonable inquiry that led to a good faith belief that grounds existed for this medical malpractice action against Wang and the Center. See footnote 15 of this opinion. The plaintiff did not, however, include a written and signed opinion letter from a similar health care provider[11] to show the existence of a good faith belief for this action as required by § 52-190a (a).[12]

On May 24, 2012, the Center filed a timely motion to dismiss the plaintiff's complaint for lack of personal jurisdiction.[13] It claimed that the plaintiff failed to attach a written opinion letter from a similar health care provider to the complaint as required by § 52-190a (a). It argued that the plaintiff's action sounded in medical malpractice and that her failure to comply with subsection (a) of § 52-190a required dismissal pursuant to subsection (c) of that statute.[14] On June 8, 2012, Wang joined the Center's motion to dismiss.

On June 28, 2012, the plaintiff requested leave to file a first amended complaint. In this request, the plaintiff indicated that "the similar health care provider opinion

existed at the time the complaint was originally filed but was inadvertently not attached to the original complaint." The plaintiff attached exhibit A to the request to file an amended complaint. Exhibit A included a copy of a proposed first amended complaint, the original certificate from the plaintiff's counsel, and an unsigned and undated opinion letter.[15] An affidavit from the plaintiff's attorney was attached as exhibit B. In this affidavit, the plaintiff's counsel averred that he represented the plaintiff in this medical malpractice action, had consulted with an expert, a licensed acupuncturist, beginning on November 16, 2011, and provided this expert with the plaintiff's medical records. He further represented that the expert signed the opinion letter on February 19, 2012, and had transmitted it to his representative that same day. The plaintiff's counsel indicated that he inadvertently failed to attach this letter to the complaint on March 30, 2012.

Additionally, the plaintiff also filed a consolidated opposition to the motions to dismiss filed by Wang and the Center on June 28, 2012.[16] Citing to this court's decision in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 585, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009), the plaintiff argued that "where the opinion letter exists at the time of the commencement of the action, but is inadvertently not attached to the complaint, a trial court has discretion to allow the amendment and deny a motion to dismiss." She further claimed that the dismissal of her complaint "would elevate form over substance" and would violate Connecticut's public policy of allowing a trial on the merits. The plaintiff emphasized that "the important dividing line is whether the opinion letter existed at the time the lawsuit was commenced or whether it was created after commencement. . . . Accordingly, the rule in *Votre*, which provides a safe harbor when the opinion letter exists prior to commencement of the lawsuit, comports with the purpose of § 52-190a and common sense." The Center filed a reply to the plaintiff's opposition to its motion to dismiss.[17]

On July 9, 2012, the Center objected to the plaintiff's request for leave to amend her complaint. It argued that the court lacked discretion to permit an amendment to the complaint in order for the plaintiff to attach an opinion letter from a similar health care provider. The Center also argued that a hearing was required to resolve its challenge to certain facts contained in the affidavit of the plaintiff's counsel.

On July 16, 2012, the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, heard oral argument on the motions to dismiss. Counsel for the Center argued that the failure to include the opinion letter of a similar health care provider constituted insufficient process and that the plaintiff should not be permitted to amend

her complaint. The plaintiff's counsel emphasized that because the opinion letter existed at the time the medical malpractice case had been commenced, the court had discretion to grant the plaintiff's request to amend the complaint so as to include the opinion letter.

On September 6, 2012, the court issued a memorandum of decision denying the motions to dismiss. After summarizing the arguments of the parties and setting forth the relevant law, the court framed the issue as follows: "Although the law is explicit that a written opinion letter complying with § 52-190a (a) must be attached to the complaint in a medical malpractice case in order to subject the defendant to the jurisdiction of the court and to avoid dismissal of the action, the law is less clear as to the legal consequences when a plaintiff obtained a statutorily valid written opinion letter prior to commencing the action but failed to attach it to her original complaint and subsequently seeks to amend her complaint to attach that written opinion letter."

After quoting from our decision in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 585,[18] the trial court noted that the discretionary power to permit an amendment to a complaint to include the § 52-190a letter applied only when such a letter existed prior to the commencement of the action. The court noted the split of authority among decisions of the Superior Court as to whether the referenced passage from *Votre* constituted dicta and concluded that it had the discretion to allow the plaintiff to amend her complaint. "Without taking a position on the viability of the language at issue in *Votre*, this court holds, in the absence of any appellate authority to the contrary, that to the extent that the written opinion letter existed prior to the commencement of this action, then the court, in the exercise of its discretion, may deny the . . . motions to dismiss and consider the written opinion letter that is attached to the amended complaint."

The court next addressed whether the opinion letter had existed prior to the commencement of the plaintiff's medical malpractice action. The court recognized that the plaintiff claimed that the undated letter had been written prior to the lawsuit, while Wang and the Center disputed this fact. Nevertheless, it determined that an evidentiary hearing was not required. The court explained: "Turning, then, to the attestations made in the affidavit, the attorney claims that he signed the complaint in this action on March 30, 2012, and that at that time he filed the complaint, the signed, written opinion letter of the similar health care provider existed and was retained in the plaintiff's file. He further attests that his failure to attach the written opinion letter was inadvertent and an oversight. Such attestations are based on the attorney's personal knowledge, and constitute facts that would be admissible at trial and indicate that the attorney is competent to testify to the matters

stated in the affidavit. [Wang and the Center did] not submit any evidence to rebut the attorney's attestations, but rather make conclusory statements challenging the evidence. . . . Therefore, in the absence of counterevidence by [Wang and the Center], the court finds that the written opinion letter existed prior to the commencement of this action and that the attorney's failure to attach it to the original complaint was inadvertence or an oversight." (Citations omitted.)

In summary, the court found that the opinion letter had been authored prior to the commencement of the action and that the failure to attach it to the original complaint resulted from inadvertence or oversight. It permitted the plaintiff to amend her complaint to include the opinion letter. On September 21, 2012, the court denied the motions to reargue and for reconsideration filed by Wang and the Center.

A number of pretrial filings, motions and hearings ensued and the trial did not commence until November 16, 2017. The jury returned its verdict in favor of the plaintiff on both the malpractice and product liability counts on December 21, 2017. Approximately six months later, Wang filed a motion for permission to file a second motion for reconsideration of the denial of his motion to dismiss.[19] Wang argued that this court's recently released decision in *Peters* v. *United Community & Family Services, Inc.*, 182 Conn. App. 688, 191 A.3d 195 (2018), was "directly on point factually, [was] controlling legally, and [served] as additional grounds for the dismissal of [the plaintiff's] claims in the instant action." On September 6, 2018, the court, *Hon. Kenneth B. Povodator*, judge trial referee, heard oral argument on both the motion for permission to file a second motion for reconsideration and the substantive merits of the request for reconsideration.

At the hearing, Wang argued that, pursuant to *Peters*, any attempt to cure a defect relating to a § 52-190a opinion letter must have occurred prior to the expiration of the statutory limitation period; otherwise, the only available remedy was to commence a new action pursuant to the accidental failure of suit statute, General Statutes § 52-592.[20] The plaintiff countered that Judge Karazin, in his 2012 decision, properly had relied on *Votre*, and that case remained good law even after *Peters*. Six days later, the Center joined Wang's motion for permission to file a second motion for reconsideration of the denial of the 2012 motion to dismiss.

On January 3, 2019, Judge Povodator issued a memorandum of decision addressing the postverdict motions that had been filed, including the motions for reconsideration of the 2012 motions to dismiss.[21] The court began by summarizing the issues relating to § 52-190a in this case and the relevant language from our decisions in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 585, and *Peters* v. *United Com-*

*munity & Family Services, Inc.*, supra, 182 Conn. App. 706. After observing that its decision constituted a "close call," the court focused on the issue of judicial economy and that the purpose underlying § 52-190a had been satisfied, given the jury's verdict in favor of the plaintiff.

The court concluded: "It would be inequitable and highly wasteful to reverse the earlier decisions in such a belated fashion. Subject matter jurisdictional issues may be raised at any time, but other jurisdictional issues are subject to waiver—and inferentially subject to other equitable considerations. For all these reasons, the motions to reargue are (have been) granted with respect to entertaining reargument and reconsidering the earlier decision, but the equities overwhelmingly dictate against affording any relief."

On appeal, Wang and the Center argue that the court improperly denied their motions to dismiss. Specifically, they contend that the plaintiff's complaint did not comply with § 52-190a due to the absence of an opinion letter from a similar health care provider. They claim that the plaintiff did not attempt to remedy this defect until after the statute of limitations had expired. Wang and the Center contend that the plaintiff's medical malpractice action should have been dismissed. The plaintiff counters that (1) Wang and the Center waived the argument that the § 52-190a defect was not cured within the statutory limitation period, (2) the purpose underlying § 52-190a was satisfied in this case given the jury's finding of medical malpractice, and (3) her amendment was filed within the three year repose period of § 52-584, which she claims is the limitation period. We agree that the court lacked personal jurisdiction over Wang and the Center as a result of the plaintiff's failure to cure the § 52-190a defect within the statutory limitation period and that the medical malpractice action, therefore, should have been dismissed.

We begin our analysis by setting forth our standard of review and a comprehensive review of the relevant legal principles. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Our Supreme Court has held that the failure of a plaintiff to comply with the statutory requirements of § 52-190a (a) results in a defect in process that implicates the personal jurisdiction of the court. . . .

"When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citations omitted; inter-

nal quotation marks omitted.) *Labissoniere* v. *Gaylord Hospital, Inc.*, 199 Conn. App. 265, 278–79, 235 A.3d 589, cert. denied, 335 Conn. 968, 240 A.3d 284 (2020), and cert. denied, 335 Conn. 968, 240 A.3d 285 (2020); see also *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 10–11, 12 A.3d 865 (2011). We employ a de novo standard of review with respect to a challenge to the trial court's ultimate legal conclusion and resulting denial of a motion to dismiss. *Perrone* v. *Buttonwood Farm Ice Cream, Inc.*, 158 Conn. App. 550, 554, 119 A.3d 659 (2015); see also *Bennett* v. *New Milford Hospital, Inc.*, supra, 10; *Labissoniere* v. *Gaylord Hospital, Inc.*, 182 Conn. App. 445, 451, 185 A.3d 680 (2018); *Lohnes* v. *Hospital of St. Raphael*, 132 Conn. App. 68, 76, 31 A.3d 810 (2011), cert. denied, 303 Conn. 921, 34 A.3d 397 (2012).[22]

Next, we turn to the statutory language. Section 52-190a (a) provides in relevant part: "No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . *To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c,* which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney . . . shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . ." (Emphasis added.) See also *Torres* v. *Carrese*, 149 Conn. App. 596, 608, 90 A.3d 256, cert. denied, 312 Conn. 912, 93 A.3d 595 (2014). Simply stated, § 52-190a applies when (1) the defendant is a health care provider and (2) the claim is one of medical malpractice. *LaPierre* v. *Mandell & Blau, M.D.'s, P.C.*, 202 Conn. App. 44, 49, 243 A.3d 816 (2020).

In *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 27, our Supreme Court explained that the purpose of § 52-190a "is to discourage the filing of baseless lawsuits against health care providers . . . ." (Internal

quotation marks omitted.) See generally *Wilcox* v. *Schwartz*, 303 Conn. 630, 640–43, 37 A.3d 133 (2012) (setting forth history of § 52-190a); *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 54, 12 A.3d 885 (2011) (legislature established comprehensive prelitigation inquiry, including requirement of opinion letter by objectively qualified health care provider, in attempt to reduce filing of frivolous medical malpractice actions).

The court in *Bennett* also considered § 52-190a (c), which provides that "[t]he *failure to obtain and file the written opinion* required by subsection (a) of this section *shall be grounds for dismissal of the action*." (Emphasis added.) In interpreting subsection (c) of § 52-190a, our Supreme Court concluded that a motion to dismiss constitutes the proper procedural vehicle to challenge any deficiencies with the requisite letter. *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 29.

Cognizant of the severity of the dismissal of an action as a result of a noncompliant opinion letter, the court noted that such a dismissal was without prejudice and that, in the event that the statute of limitations had run, the accidental failure of suit statute, § 52-592,[23] may afford relief in certain circumstances. Id., 30–31; see also *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 46–47 (holding that when medical malpractice action has been dismissed pursuant to § 52-190a (c) for failure to supply opinion letter by similar health care provider, plaintiff may commence otherwise time barred action pursuant to matter of form provisions of § 52-592 (a), only if that failure was caused by simple mistake or omission, rather than egregious conduct or gross negligence attributable to plaintiff or plaintiff's attorney). It bears emphasizing, however, that "[d]ismissal is the mandatory remedy when a plaintiff fails to file an opinion letter that complies with § 52-190a (a)." (Internal quotation marks omitted.) *Doyle* v. *Aspen Dental of Southern CT, PC*, 179 Conn. App. 485, 492, 179 A.3d 249 (2018); see also *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 701; see generally *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 584 (noting that courts are bound to uphold law that legislature adopts and that § 52-190a (c) plainly states that failure to include letter mandated by § 52-190a (a) shall be grounds to dismiss action).

In *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 397, 21 A.3d 451 (2011), our Supreme Court determined "the precise nature of the jurisdiction which is to be challenged pursuant to the dismissal language of § 52-190a (a)." After a review of the relevant case law, it concluded that the failure to comply with the requirements of § 52-190a (a) implicated personal jurisdiction and not the subject matter jurisdiction of the court. Id., 399. It noted that, unlike matters involving subject matter

jurisdiction, personal jurisdiction may be obtained via consent or waiver. Id. Additionally, the *Morgan* court noted that a motion to dismiss contesting personal jurisdiction must be filed within thirty days of the filing of an appearance or such a claim would be waived. Id.; see also Practice Book §§ 10-6, 10-7, 10-30, and 10-32. "Accordingly, we conclude that, because the written opinion letter of a similar health care provider must be attached to the complaint in proper form, the failure to attach a proper written opinion letter pursuant to § 52-190a constitutes insufficient service of process and, therefore, Practice Book § 10-32 and its corresponding time and waiver rule applies by its very terms. Because we conclude that the absence of a proper written opinion letter is a matter of form, it implicates personal jurisdiction. It is in the nature of a pleading that must be attached to the complaint." (Footnote omitted.) *Morgan* v. *Hartford Hospital*, supra, 402; see also *Ugalde* v. *Saint Mary's Hospital, Inc.*, 182 Conn. App. 1, 7, 188 A.3d 787, cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018); *Gonzales* v. *Langdon*, 161 Conn. App. 497, 513–14, 128 A.3d 562 (2015).

Thus, in a medical malpractice action, a plaintiff must comply with § 52-190a by including an opinion letter from a similar health care provider with the complaint to establish personal jurisdiction, and a timely challenge to the failure to include a legally sufficient opinion letter will result in a dismissal. In a series of decisions, all of which were issued after the 2012 motions to dismiss and during the pendency of these proceedings before the trial court, our court addressed how a plaintiff, whose opinion letter to the medical malpractice complaint was defective, could avoid dismissal or otherwise pursue his or her claim.

In *Gonzales* v. *Langdon*, supra, 161 Conn. App. 508, we considered "whether a complaint alleging medical malpractice that does not include a legally sufficient opinion letter may be amended to avoid dismissal, and under what circumstances an amendment is permitted." In that case, the plaintiff alleged that the defendant, a dermatologist who held himself out as a specialist in cosmetic surgery, negligently performed a neck and jowl face-lift procedure. Id., 500–501. The plaintiff attached an opinion letter from a board certified dermatologist. Id., 501. The defendant moved to dismiss the complaint on the basis that the opinion letter contained insufficient details regarding the qualifications of the author of the opinion letter. Id. In addition to her contention that the original opinion letter was, in fact, legally sufficient, the plaintiff filed a request for leave to amend her complaint more than thirty days from the return date, thus past the time to amend it as of right,[24] but within the applicable statutory limitation period. Id., 501–502. Specifically, she sought to include an amended version of the original opinion letter and a new opinion letter authored by a board certified plastic surgeon. Id.,

501. The trial court granted the defendant's motion to dismiss on the basis that the original opinion letter was not legally sufficient. Id., 502–503.

On appeal, we agreed that the original opinion letter was insufficient because the author was not a similar health care provider as defined by § 52-184c (c).[25] Id., 507. We then considered whether the plaintiff's complaint could be amended and the circumstances under which such an amendment would be permitted. Id., 508. We reasoned that the general applicability of General Statutes § 52-128 and Practice Book §§ 10-59 and 10-60, the policies underlying § 52-190a (a), and judicial economy all favored permitting an amendment filed after the thirty days to amend as of right but *before* the statute of limitations had expired. Id., 517–20. We concluded, therefore, that the trial court had abused its discretion by not granting the plaintiff leave to amend the complaint with the amended original opinion letter and the new opinion letter. Id., 521. We further determined, however, that the amended original opinion letter did not meet the requirements of §§ 52-190a and 52-184c, and that the record was insufficient to determine whether the new opinion letter satisfied § 52-184c (c). Id., 523.

Next, in *Ugalde* v. *Saint Mary's Hospital, Inc.*, supra, 182 Conn. App. 3, the plaintiff alleged that the defendant, a general surgeon, negligently performed a robot-assisted gastrectomy. The opinion letter attached to the complaint failed to identify the medical qualifications of its author. Id., 5. The defendant, therefore, moved to dismiss the complaint on the basis of a deficient opinion letter. Id. The plaintiff filed a request for leave to amend the complaint by adding details to the opinion letter regarding the author's medical qualifications. Id. The trial court granted the defendant's motion, reasoning that a request for leave to amend the complaint had been filed outside of the applicable limitation period. Id., 6.

On appeal, the plaintiff argued only that she should have been permitted to amend the complaint with a more detailed opinion letter. Id., 8. In rejecting this argument, we first noted: "In *Gonzales* v. *Langdon*, [supra, 161 Conn. App. 510], this court held, as a matter of first impression, that a legally insufficient opinion letter may be cured by amendment under two circumstances. The court held: [I]f a plaintiff alleging medical malpractice seeks to amend his or her complaint in order to amend the original opinion letter, or to substitute a new opinion letter for the original opinion letter, *the trial court (1) must permit such an amendment if the plaintiff seeks to amend as of right within thirty days of the return day and the action was brought within the statute of limitations, and (2) has discretion to permit such an amendment if the plaintiff seeks to amend within the applicable statute of limitations*

*but more than thirty days after the return day.* The court may abuse its discretion if it denies the plaintiff's request to amend despite the fact that the amendment would cure any and all defects in the original opinion letter and there is an absence of other independent reasons to deny permission for leave to amend." (Emphasis added; internal quotation marks omitted.) *Ugalde* v. *Saint Mary's Hospital, Inc.*, supra, 182 Conn. App. 8.

The plaintiff conceded that she had failed to file her request for leave to amend the complaint within thirty days of the return date. Id., 8–9. We then rejected the plaintiff's reliance on *Gonzales* v. *Langdon*, supra, 161 Conn. App. 497, explaining: "The holding in *Gonzales* permits amendment to legally insufficient opinion letters *only if they are sought prior to the expiration of the statute of limitations.*" (Emphasis added.) *Ugalde* v. *Saint Mary's Hospital, Inc.*, supra, 182 Conn. App. 12.

Finally, in *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 691, the plaintiff sued the defendant dentist, who held himself out as a specialist in oral and maxillofacial surgery, for malpractice. The opinion letter attached to the complaint did not indicate if its author was certified as a specialist. Id., 692. The defendant moved to dismiss the complaint, arguing that the opinion letter needed to be authored by an individual trained in the same medical specialty and certified by an American board in the same medical specialty. Id., 693. In response, the plaintiff contended that the author had "inadvertently left out the fact that he was board certified" and sought to cure this defect by submitting an affidavit attesting that the author had been board certified at all relevant times. Id., 694–95. The plaintiff, however, did not seek permission to amend the complaint or to file an amended opinion letter. Id., 695.

At oral argument on the motion to dismiss, the defendant argued that the court lacked discretion to consider the affidavit because the efforts to cure the opinion letter had occurred more than thirty days after the return date of the complaint and *after the statute of limitations had expired.* Id., 695. The court subsequently granted the defendant's motion to dismiss. Id., 696–97. It agreed that the letter was deficient because it had failed to state whether the author was board certified, and concluded that it was not necessary to determine whether this deficiency could be remedied by the filing of an affidavit rather than an amended pleading because neither option remained viable due to the expiration of the statute of limitations. Id., 697–98.

On appeal, the sole issue before this court was "whether the trial court, in ruling on the motion to dismiss, correctly determined that our decision in *Gonzales* v. *Langdon*, supra, 161 Conn. App. 497 . . . barred it from considering the affidavit that [the plain-

tiff] had attached to his opposition to the motion to dismiss in an effort to cure the defect in the opinion letter attached to the complaint." *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 699.[26] We concluded that the plaintiff's efforts to correct the deficient opinion letter had occurred after the expiration of the statute of limitations and, therefore, the court properly granted the defendant's motion and dismissed the action. Id.

In our analysis, we noted that, prior to our decision in *Gonzales* v. *Langdon*, supra, 161 Conn. App. 497, our Supreme Court had recognized that a plaintiff whose medical malpractice action that had been dismissed for failing to comply with the opinion letter requirements of § 52-190a (a), could either refile the action or attempt to seek redress via § 52-592. *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 701. We also recognized that, in *Gonzales* v. *Langdon*, supra, 510, this court had held, for the first time, that "a plaintiff who files a legally insufficient opinion letter may, in certain instances, cure the defective opinion letter through amendment of the pleadings, thereby avoiding the need to file a new action." *Peters* v. *United Community & Family Services, Inc.*, supra, 701.

Turning to the facts and circumstances in *Peters*, this court acknowledged that certain decisions of the Superior Court had permitted a plaintiff to cure a defective opinion letter via a supplemental affidavit rather than by seeking leave to file an amended pleading. *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 703–704. We ultimately declined to address that issue[27] and concluded that, because the plaintiff had failed to undertake any attempt to remedy the defective opinion letter until *after* the statute of limitations had expired, the trial court properly had granted the motion to dismiss. Id., 705–706. "Regardless of the type of procedure a plaintiff elects to employ to cure a defect in an opinion letter filed in accordance with § 52-190a, that procedure must be initiated prior to the running of the statute of limitations. Otherwise the sole remedy available will be to initiate a new action, if possible, pursuant to § 52-592." Id., 706.

Guided by these precedents, we return to the facts of the present case. The plaintiff commenced her action against Wang and the Center on April 6, 2012, and April 4, 2012, respectively. In her pleadings, she consistently alleged that, on April 22, 2010, she suffered injuries, namely, the burning of her toes and foot, as a result of Wang's professional negligence. The plaintiff's counsel attached a signed, good faith certificate that he had conducted a reasonable inquiry into the circumstances of the plaintiff's claims and that, on the basis of that inquiry, he believed in good faith that Wang and the Center had been negligent in the treatment of the plaintiff. The plaintiff's counsel, however, failed to attach a

signed opinion letter from a similar health care provider as required by § 52-190a. Accordingly, Wang and the Center timely moved to dismiss the plaintiff's action pursuant to § 52-190a (c).

On June 28, 2012, the plaintiff filed a request for leave to file an amended complaint and a memorandum in opposition to the 2012 motions to dismiss. In the former, the plaintiff indicated that the purpose of the requested amended complaint was to include a written, signed opinion letter from a similar health care provider that had existed at the time the complaint had been filed, but inadvertently was not attached to the original complaint. The plaintiff's counsel also included an affidavit setting forth the details regarding when he had received the opinion letter and the inadvertent failure to attach the signed opinion letter to the complaint.

After hearing oral argument, the court issued a memorandum of decision on September 6, 2012, denying the motions to dismiss and overruling the objection to the plaintiff's request for leave to amend her complaint. The court reasoned that the plaintiff had obtained the opinion letter prior to the commencement of her medical malpractice action, but failed to include it with her original complaint due to inadvertence and oversight. It further concluded that to dismiss the action would elevate form over substance and violate the public policy of permitting a trial on the merits. On September 21, 2012, the court denied the motions to reargue and for reconsideration filed by the Center and Wang.

Pretrial proceedings ensued over the course of several years. During the time period between the denial of the 2012 motions and the second motion for reconsideration filed in 2018, the law concerning § 52-190a developed in our appellate courts. See, e.g., *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 63 A.3d 940 (2013) (released on April 23, 2013); *Torres* v. *Carrese*, supra, 149 Conn. App. 596 (released on April 22, 2014); *Gonzalez* v. *Langdon*, supra, 161 Conn. App. 497 (released on December 1, 2015); *Ugalde* v. *Saint Mary's Hospital, Inc.*, supra, 182 Conn. App. 1 (released on May 15, 2018); *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 688 (released on June 19, 2018). Significantly, our jurisprudence shifted from consideration of whether the opinion letter had existed at the time the plaintiff commenced the malpractice action to a focus on whether the elected procedure to remedy a defective opinion letter had begun prior to the expiration of the statute of limitations.

The trial occurred in November and December, 2017. On December 21, 2017, the jury returned a verdict for the plaintiff. Wang, the Center, and WABBO each filed various postverdict motions, seeking, inter alia, to set aside the verdict, judgment notwithstanding the verdict, and for remittitur. On June 26, 2018, Wang filed a motion for permission to file a second motion to reconsider

the 2012 denial of the motion to dismiss. In that motion, Wang directed the trial court to our decision in *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 688, and described that opinion as legally controlling and supporting the dismissal of the medical malpractice action. The court heard oral argument on September 6, 2018.[28] During this proceeding, Wang's counsel argued that any remedy to correct a defect in the opinion letter must have been commenced within the applicable statute of limitations, pursuant to our then relatively recently released decision in *Peters*.

On January 3, 2019, the court issued its memorandum of decision addressing the various postverdict motions that had been filed. At the outset of its analysis relating to the motion for reconsideration of the 2012 motions to dismiss, the court recognized that, at the time of the 2012 decision denying the motions to dismiss, "the sole relevant appellate authority was *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, [supra, 113 Conn. App. 585], which contained language—disputed as to whether it was dictum or controlling—relating to the propriety of a belated filing of an already-existing opinion letter, and it was the significance of that language that was subject to disagreement by trial courts." The court noted that in *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 688, our court "held that corrective action relating to an opinion letter from a similar health care provider *had to be undertaken within the applicable statute of limitations*." (Emphasis added.) Thus, the court had to consider whether our 2018 opinion in *Peters* necessitated a contrary decision from the 2012 denial of the motions to dismiss.

The court began its consideration of this statute of limitations issue by noting that the request to amend the complaint had been filed "substantially" more than two years after the date of the plaintiff's injury and that there had been no claim that the plaintiff took any ameliorative action prior to the expiration of the statute of limitations. It then identified two related concerns regarding the timing and nature of the 2018 requests for reconsideration of the 2012 denial of the motions to dismiss. First, it stated that a motion for reconsideration generally is filed not years after the underlying decision, but rather within days. Thus, as a general matter, only a minimal chance exists that controlling precedent materially will alter the relevant legal landscape. Second, the court posited whether the motions to dismiss could be revisited six years after their initial denial and after an intervening trial on the merits, particularly at the trial court level.[29] The court granted the motions for reconsideration "to reconcile, or determine the interplay between, two Appellate Court decisions, *Peters* and *Votre*."

With respect to the substantive merits regarding

whether the motions to dismiss should be granted, albeit belatedly, the court recognized that, subsequent to the 2012 memorandum of decision, which had focused on whether a valid opinion letter existed at the time the medical malpractice action had been commenced, our appellate courts determined that a plaintiff must take corrective action with respect to a defective opinion letter within the applicable statute of limitations. Nevertheless, the court ultimately concluded that the prior denials of the motions to dismiss should stand for several reasons.

First, the court noted that both *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 688, and *Gonzales* v. *Langdon*, supra, 161 Conn. App. 497, concerned the correction of attached, but defective opinion letters, whereas the plaintiff in the present case had failed to attach the opinion letter to her complaint.[30] Second, it observed that *Gonzales* v. *Langdon*, supra, 497, and *Torres* v. *Carrese*, supra, 149 Conn. App. 596, mentioned the statute of limitations as the benchmark for when correction of a defective opinion letter must occur and that both of these cases had been issued prior to the commencement of the present trial. The court noted that neither the goal of judicial economy nor the purpose of § 52-190a would be advanced if it nullified the trial and the jury's verdict based on the statute of limitations argument advanced by Wang and the Center. Ultimately, the court concluded: "It would be inequitable and highly wasteful to reverse the earlier decisions in such a belated fashion. Subject matter jurisdictional issues may be raised at any time, but other jurisdictional issues are subject to waiver—and inferentially subject to other equitable considerations."

Given our decision in *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 706, it cannot be disputed that regardless of the method employed to cure a defect in an opinion letter filed pursuant to § 52-190a, such correction must be initiated prior to the expiration of the statute of limitations. Wang and the Center argue that the *Peters* holding applies in the present case and the denials of the 2012 motions to dismiss must be reversed. The plaintiff counters that Wang and the Center waived this statute of limitations argument, the purpose of § 52-190a was satisfied as a result of the jury's verdict, and the amendment to the medical malpractice complaint was filed timely within the three year statute of repose contained in § 52-584, and, therefore, the judgment of the court must stand.[31]

We first consider the plaintiff's argument that Wang and the Center waived their statute of limitations claim as it related to § 52-190a and *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 688. In her brief, the plaintiff notes that, as a general matter, our courts have "made it clear that we will not permit parties to anticipate a favorable decision,

reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) *C.R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 87, 919 A.2d 1002 (2007). She then contends that the statute of limitations argument related to § 52-190a could have been made in the 2012 motions to dismiss; see, e.g., *Bennett* v. *New Milford Hospital*, supra, 300 Conn. 30–31; or raised in 2014 and 2015, or when this court released its decision in *Torres* v. *Carrese*, supra, 149 Conn. App. 596, and *Gonzales* v. *Langdon*, supra, 161 Conn. App. 497, respectively. We are not persuaded that Wang and the Center waived their statute of limitations argument.

A discussion of *Torres* v. *Carrese*, supra, 149 Conn. App. 596, is instructive. In that case, the plaintiff commenced a medical malpractice action against her obstetricians in September, 2006. Id., 601–602. She attached to her complaint an opinion letter from a board certified urologist. Id., 603. In November, 2006, the obstetricians moved to dismiss the complaint on the ground that the opinion letter had not been written by a similar health care provider. Id., 604. The trial court ultimately denied the motions to dismiss, reasoning that an insufficient letter, as opposed to the absence of such a letter, was not a sufficient ground for dismissal. Id., 605.

"On January 19, 2011, the case was called for trial. On January 31, 2011, and February 10, 2011, after our Supreme Court released its opinion in *Bennett* v. *New Milford Hospital, Inc.*, [supra, 300 Conn. 21] (holding in cases against specialists, author of written opinion letter pursuant to § 52-190a (a) must be similar health care provider as defined in § 52-184c (c), regardless of author's potential qualifications to testify at trial, and insufficient written opinion letter, while not impairing subject matter jurisdiction, requires dismissal of action under § 52-190a (c)), the [obstetricians] each filed new motions to dismiss the plaintiff's complaint. On March 7, 2011, the court granted the [obstetricians'] motions to dismiss the plaintiff's complaint because the plaintiff failed to attach an opinion letter from a similar health care provider to the complaint as required by § 52-190a." (Footnotes omitted; internal quotation marks omitted.) *Torres* v. *Carrese*, supra, 149 Conn. App. 605–606.

On appeal, the plaintiff argued, inter alia, that the obstetricians' 2011 motions to dismiss had been filed outside of the time period set forth by Practice Book § 10-30 and the trial court erred by considering and granting them. Id., 607. The obstetricians countered that their "2011 motions to dismiss were functionally motions to reargue their timely filed 2006 motions to dismiss the plaintiff's complaint." Id., 612. Due to the unique circumstances of that case, we agreed with the obstetricians. Id. First, we concluded that, despite their title, the 2011 motions "essentially sought to reverse or

to modify the denials of their earlier 2006 motions to dismiss" and therefore the trial court properly had concluded that, in reality, these were motions to reargue. Id., 614.

Next, we determined that the court had not abused its discretion by considering the 2011 motions to reargue, despite the twenty day time period set forth in Practice Book § 11-12 (a). Id., 614–15. We explained: "[T]he [obstetricians], in filing their 2011 motions to dismiss, *sought reconsideration because of a newly articulated controlling principle of law set forth by our Supreme Court* in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 1. . . . See *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001) ([T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . [A] motion to reargue . . . is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument. . . .). *Thus, it was reasonable for the [obstetricians] to file what amounts to a late motion to reargue before a second judge in light of the Supreme Court's decision in Bennett, issued almost four years after [the trial court] issued [its] ruling on the [obstetricians'] 2006 motions to dismiss.*" (Emphasis added; internal quotation marks omitted.) *Torres* v. *Carrese*, supra, 149 Conn. App. 616–17.

We further noted the particular circumstances of *Torres* with respect the trial court's consideration of the obstetricians' motions to reconsider after an extended time period. "The trial court correctly determined that *Bennett* [v. *New Milford Hospital, Inc.*, supra, 300 Conn. 1] was to have retroactive effect. See, e.g., *Marone* v. *Waterbury*, 244 Conn. 1, 10, 707 A.2d 725 (1998) ('judgments that are not by their terms limited to prospective application are presumed to apply retroactively'). In light of *Bennett*, the court was faced with a situation in which any judgment rendered on the professional negligence issues in favor of the plaintiff would likely be reversed in any event. By dealing with the issue, the court avoided the time and expense, to the state and to the parties, of a perhaps pointless trial." *Torres* v. *Carrese*, supra, 149 Conn. App. 617 n.23.

Similar circumstances exist in the present case that warrant and justify consideration of the argument regarding the statute of limitations and § 52-190a, even though it was raised approximately six years after the initial 2012 motions to dismiss. First, Wang and the Center, in their 2012 motions to dismiss, claimed that the plaintiff had failed to comply with the requirements of § 52-190a due to her counsel's failure to include an opinion letter, raising a challenge pertaining to personal

jurisdiction. Second, during the pendency of the proceedings, new appellate authority was released in 2018, namely, *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 688, and that opinion presumptively applied retroactively. The decision in *Peters*, which related to the claim set forth in the 2012 motions to dismiss, expressly held that efforts to remedy a defective opinion letter must be initiated prior to the running of the statute of limitations.[32] Id., 706. Wang and the Center *may have raised* this argument during the pretrial proceedings, but we are not aware of, nor has the plaintiff directed us to any controlling case, statute, or rule of practice that would require them to do so or face the consequences of waiver. For these reasons, we are not persuaded by the plaintiff's contention that Wang and the Center waived the argument relating to the statute of limitations and § 52-190a.

Next, we consider the plaintiff's contention that, as a result of the jury's verdict, the purpose of § 52-190a, preventing frivolous medical malpractice actions, was served in the present case, and, therefore, to dismiss the medical malpractice action at this juncture would elevate form over substance to an unreasonable degree. We are not persuaded.

Indisputably, the purpose of § 52-190a is to prevent frivolous medical malpractice actions, and the requirement of a letter from a similar health care provider "was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they obtained from the experts." (Internal quotation marks omitted.) *Shortell* v. *Cavanagh*, 300 Conn. 383, 388, 15 A.3d 1042 (2011); see also *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 55; *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 12; *Barrett* v. *Montesano*, 269 Conn. 787, 796, 849 A.2d 839 (2004); *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 584.

The plaintiff argues that, because the jury found in her favor with respect to the medical malpractice action, it could not constitute a frivolous action. We acknowledge the pragmatic nature of this contention. Our legislature, however, specifically authorized the dismissal of a medical malpractice action for the failure to attach an opinion letter to the complaint. General Statutes § 52-190a (c); *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 822, 943 A.2d 544 (2008); see also *Santorso* v. *Bristol Hospital*, supra, 308 Conn. 349 (noting *mandatory* dismissal where plaintiff fails to comply with § 52-190a (c)); *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 398 (Supreme Court recognized that opinion letter was akin to pleading that *must* be attached to complaint in order to commence medical malpractice action); *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 6 (trial court was *required* to dismiss action as consequence

of failure to provide opinion letter); *Wood* v. *Rutherford*, 187 Conn. App. 61, 73, 201 A.3d 1025 (2019) (failure to attach proper written opinion letter mandates dismissal of action); *Ugalde* v. *Saint Mary's Hospital, Inc.*, supra, 182 Conn. App. 12 (if amendment to legally insufficient opinion letter is not sought prior to expiration of statute of limitations, dismissal is required by § 52-190a); *Doyle* v. *Aspen Dental of Southern CT, PC*, supra, 179 Conn. App. 492 (dismissal is mandatory remedy when plaintiff fails to file opinion letter in compliance with § 52-190a). As we noted in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 584–85: "We are bound to uphold the laws the legislature adopts. . . . Legislative power under article third [of our state constitution] reposes in the Senate and the House of Representatives, not in the Judiciary."

The argument advanced by the plaintiff would effectively deprive medical providers of the ability to appeal from an adverse ruling with respect to the existence and sufficiency of an opinion letter following a trial on the merits. Although we understand the practical aspect of the plaintiff's argument with respect to judicial economy and the fact that these proceedings occurred over several years and culminated in a five week trial, we decline to foreclose the ability of litigants to seek appellate review with respect to § 52-190a. Consistent with established precedent, an appellate determination that the trial court improperly concluded that personal jurisdiction existed has resulted in the dismissal or vacatur of the subsequent proceedings before the trial court. See *Green* v. *Simmons*, 100 Conn. App. 600, 606–609, 919 A.2d 482 (2007) (judgment in favor of plaintiff reversed and remanded with direction to dismiss action where Appellate Court determined plaintiff failed to establish that requirements of long arm statute had been satisfied and therefore court had improperly exercised personal jurisdiction over defendants); see, e.g., *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 535, 923 A.2d 638 (2007); *Narayan* v. *Narayan*, 122 Conn. App. 206, 216, 3 A.3d 75 (2010), rev'd on other grounds, 305 Conn. 394, 46 A.3d 90 (2012). For these reasons, we are not persuaded by the plaintiff's argument that a jury verdict in a medical malpractice action would insulate a defect in the required opinion letter from appellate review.

Finally, the plaintiff argues, for the first time on appeal and as an alternative ground for affirming the verdict, that, pursuant to the repose section of § 52-584, she timely amended her complaint to include the opinion letter before the expiration of the three year statute of repose.[33] Under these facts and circumstances, we conclude that the two year statute of limitations applied in the present case.

We begin with language of the applicable statute of limitations for medical malpractice actions. Section 52-

584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, advanced practice registered nurse, hospital or sanatorium, *shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."* (Emphasis added.)

In *Wojtkiewicz* v. *Middlesex Hospital*, 141 Conn. App. 282, 60 A.3d 1028, cert. denied, 308 Conn. 949, 67 A.3d 291 (2013), we distinguished the different time periods identified in § 52-584. "[T]his statute imposes two specific time requirements on plaintiffs. The first requirement, referred to as the discovery portion . . . requires a plaintiff to bring an action within two years from the date when the injury is first sustained or *discovered* or in the exercise of reasonable care should have been discovered . . . . The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of. . . . The three year period specifies the time beyond which an action under § 52-584 is absolutely barred, and the three year period is, therefore, a statute of repose." (Emphasis in original; internal quotation marks omitted.) Id., 286–87; *Rosato* v. *Mascardo*, 82 Conn. App. 396, 401–402, 844 A.2d 893 (2004); see also *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 200–201, 905 A.2d 1135 (2006).

In *Lagassey* v. *State*, 268 Conn. 723, 846 A.2d 831 (2004), our Supreme Court stated: "The limitation period for actions in negligence begins to run on the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. . . . In this regard, the term injury is synonymous with legal injury or actionable harm. Actionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. . . . A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence; they are therefore necessary ingredients for actionable harm. . . . Furthermore, actionable harm may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another. . . . In this regard, the harm complained of need not have reached its fullest manifestation in order for the limitation period to begin to run; a party need only have suffered some form of actionable harm." (Citations omitted; internal quotation marks omitted.) Id., 748–49;

see also *Barrett* v. *Montesano*, 269 Conn. 787, 793, 849 A.2d 839 (2004); *Parnoff* v. *Aquarion Water Co. of Connecticut*, 188 Conn. App. 153, 168, 204 A.3d 717 (2019). The focus, however, is on the plaintiff's knowledge of the facts, rather than the discovery of applicable legal theories. *Catz* v. *Rubenstein*, 201 Conn. 39, 47, 513 A.2d 98 (1986).

As a general matter, the determination of whether a plaintiff, in the exercise of reasonable care, should have discovered actionable harm for purposes of § 52-584 is for the trier of fact. *Lagassey* v. *State*, supra, 268 Conn. 749. Under some circumstances, however, the start of the two year statute of limitations in a medical malpractice action may be decided as a matter of law. For example, in *Burns* v. *Hartford Hospital*, 192 Conn. 451, 472 A.2d 1257 (1984), our Supreme Court considered whether summary judgment properly had been rendered in favor of the defendant physician and hospital. In that case, the two year old plaintiff had been treated following an automobile accident. Id., 452. This medical treatment included the insertion of intravenous tubes into the plaintiff's legs. Id. Approximately one week later, the child's left leg became swollen and red. The physician initially diagnosed the condition as a hematoma, but after further procedures and testing, discovered an infection, likely from contaminated intravenous tubes. Id., 452–53.

The plaintiff filed an action more than two years from the date on which the infection in his leg was first discovered. Id., 453. The physician and the hospital moved for summary judgment based on the statute of limitations. Id., 453–54. The trial court granted the motions for summary judgment. Id., 454. Our Supreme Court held that that the two year statute of limitations commenced on the date the child's mother was aware he had an infection and not a hematoma. Id., 459–60. "Because the plaintiff did not bring suit within two years of discovering the injury, the trial court correctly ruled that the action was barred by the statute of limitations." Id., 460.

Although the procedural posture of *Burns* v. *Hartford Hospital*, supra, 192 Conn. 451, differs from the present case, its reasoning guides us to reject the plaintiff's reliance on the repose section of § 52-584. In the present case, the allegations in the complaint conclusively establish that the plaintiff had knowledge, on the date of the incident, of the nature and extent of the injuries to her foot. The knowledge of these facts would put a reasonable person on notice that those injuries were the result of Wang's alleged negligent conduct. To conclude otherwise would eviscerate the policies underlying the statute of limitations. See *Lindsay* v. *Pierre*, 90 Conn. App. 696, 701, 879 A.2d 482 (2005). For these reasons, we reject the plaintiff's reliance on the repose section of § 52-584 and her claim that the

efforts to cure the opinion letter were timely.

In sum, the plaintiff failed to attach an opinion letter as required by § 52-190a to her complaint. None of the arguments advanced by the plaintiff disputes this fact. Wang and the Center demonstrated that her efforts to cure this defect were not commenced within the statutory limitation period. We are not persuaded by the plaintiff's additional arguments regarding § 52-190a. We conclude that the court did not have personal jurisdiction as to Wang and the Center and that the medical malpractice action should have been dismissed.

## II

### AC 42505

In AC 42505, WABBO claims that the court improperly denied its motions for a directed verdict and to set aside the verdict because the plaintiff did not establish the element of causation. Specifically, WABBO argues that it was entitled to judgment in the product liability action because the plaintiff failed to prove how the heat lamp came into contact with her foot. The plaintiff responds that she satisfied her burden with respect to the element of causation, including by means not challenged by WABBO on appeal. We agree with the plaintiff.

In her third amended third-party complaint (operative third-party complaint) against WABBO,[34] the plaintiff alleged a violation of the Connecticut Product Liability Act, General Statutes § 52-572m et seq.[35] In this pleading, the plaintiff alleged that WABBO was a foreign corporation authorized to do business in Connecticut and that it sold the heat lamp to Wang for use in Connecticut. She further alleged that WABBO placed the heat lamp into the stream of commerce with the expectation that it would reach consumers without a substantial change in condition. On April 22, 2010, Wang used the heat lamp, which had not been substantially changed, during the plaintiff's acupuncture treatment. The plaintiff claimed that the stabilizing hardware and hydraulic mechanisms for the head and arm of the heat lamp were deficient and resulted in the heating element coming into contact with her foot and injuring her.

The plaintiff alleged that WABBO was negligent and strictly liable in distributing, selling, and/or otherwise placing the heat lamp into the stream of commerce by failing (1) to affix a warning on the heat lamp regarding the propensity of its arm to lower, (2) to include any locking devices on the hydraulic mechanisms and joints of the heat lamp, (3) to include a safety guard over the face of the heating element, and/or (4) to provide a user manual or instructions with the heat lamp or on its website.[36] She further alleged that "[o]ne or more of these defects and acts of negligence described herein was a substantial factor in causing the injuries to the plaintiff." (Emphasis added.)

Wang testified that the heat lamp he had purchased from WABBO did not come with a manual or warnings about the propensity of the head of the heat lamp to fall down. He also stated that the absence of a locking mechanism, a safety guard, a manual, or warnings made the heat lamp unreasonably dangerous.

Sami Kuang Wu, the owner of WABBO, testified that Wang had purchased the heat lamp in March, 2008. She also stated that the heat lamp was shipped without locking devices on the joints of its arms or a "safety shield" between the heating element plate and the patient. Wu further testified that the spring pistons that provided the upward force needed to hold the heat lamp in place would lose their function as the device was used and eventually would no longer maintain the placement of the heat lamp. She explained that as the spring pistons became worn, the heat lamp had a tendency to lower inadvertently and spontaneously on its own, and that WABBO was aware of this tendency in 2008. Wu also indicated that Wang should have received a manual and that a warning sticker should have been affixed to the heat lamp.

The plaintiff presented testimony from Victor A. Popp, a registered professional engineer. Popp testified about various locking mechanisms that could have been used to prevent the inadvertent downward movement of the head of the heat lamp, where the heating element was located. He indicated that the use of a safety guard would have prevented the heating element from coming into contact with the skin of a patient if the arm lowered. He opined that in 2008, both a locking mechanism and a safety guard would have been economically and technologically feasible.

The plaintiff's counsel asked a lengthy hypothetical question in which Popp was to assume as true various facts regarding the heat lamp and the April 22, 2010 incident. Popp concluded that the defective condition of the heat lamp was a substantial factor contributing to the plaintiff's injuries and opined, to a reasonable degree of engineering certainty, that the heat lamp was in a defective condition in March, 2008, when it was sold without a locking mechanism for the arm and without a safety guard over the heating element and that the inclusion of these devices on the heat lamp would have prevented the plaintiff from being burned.

The parties presented their closing arguments on December 19, 2017. The plaintiff's counsel argued that there was evidence that the heat lamp was unreasonably dangerous due to (1) the propensity of the arm to lower, (2) the lack of a locking mechanism on the arm, (3) the lack of a safety guard over the heating element, (4) the lack of a warning sticker on the heat lamp, and/or (5) the lack of a user's manual. The plaintiff's counsel specifically argued that if there had been a safety guard

over the heating element, then the plaintiff would not have been injured. During his rebuttal argument, counsel again emphasized that the lack of a safety guard caused the plaintiff's injuries.

The court charged the jury on December 19 and 20, 2017. At the outset, the court instructed the jury that the plaintiff had asserted a claim against WABBO that the heat lamp used by Wang was unreasonably dangerous and defective. The court stated: "The plaintiff's specific allegations of defects and *inadequate preventative measures* include claims that WABBO placed the lamp into commerce, namely, sold it to . . . Wang, despite the absence of any warning affixed to the lamp concerning the heat plate's potential to cause harm and/or injury; the negligently-designed and/or manufactured condition of the lamp due to the failure to include adequate locking devices to prevent unintended lowering; the failure to provide a user manual or instructions for use with the lamp or on its website; and/or the failure to place a heating shield of some sort in front of the heating plate." (Emphasis added.)

The court then instructed the jury as to the elements of a claim under the Connecticut Product Liability Act. It informed the jury that the plaintiff only needed to prove one such deficiency or hazard in order to satisfy the necessary elements for this cause of action. With respect to the element of causation, the court defined "cause in fact" and proximate cause.

WABBO challenged the absence of proof regarding the causation element during the evidentiary phase of the trial and in a postverdict motion. On December 13, 2017, WABBO moved for a directed verdict, claiming that the plaintiff failed "to remove her claims that her injuries were caused by a defect in [WABBO's] product from the realm of speculation and conjecture." The court deferred its ruling on WABBO's motion pursuant to Practice Book § 16-37.[37]

On December 29, 2017, WABBO filed a motion to set aside the jury's verdict and incorporated the arguments it previously had set forth in its motion for a directed verdict. Specifically, WABBO again claimed that "the evidence presented by the plaintiff has failed to remove the issue of causation of her injuries from the realm of speculation and conjecture and the plaintiff has failed to sustain her burden of proof as to her claims of the Connecticut [Product] Liability Act . . . ."

In its January 3, 2019 memorandum of decision, the trial court addressed WABBO's causation arguments. The court noted that the plaintiff "need not prevail on more than one specification of negligence or product defect, in order to sustain the verdict." The court observed that "*the claimed lack of any specific mechanism for the lamp head to come into contact with the plaintiff's foot would not undermine the causative link*

*between failing to protect against a hot surface coming into contact with the skin of a user or a user's client/patient. . . . [H]ow the lamp came into contact with the plaintiff's foot is not the issue when there is a claim that there should have been a protective feature or device which would have prevented an injury* however the lamp might have come into contact with an individual such as the plaintiff." (Emphasis added.)

Continuing its analysis, the court stated that Wu had acknowledged that, in 2008, it was technologically feasible and would have involved a minimal cost to add protection over the face of the heat lamp. Wu also had indicated that locking mechanisms for the movable arm of the heat lamp were in use in similar products in 2008. The court found that "WABBO, as distributor of the product, was aware of the propensity for such lamps, over time to lose tension such that the lamp head could spontaneously lower. (A spring piston mechanism holds the arm and lamp head in position, but over time and with usage, the spring loses some of its ability to maintain the position of the lamp as originally set.) As a progression of loss of ability to hold its position, there would be an intermediate loss of tension, whereby some (decreasing over time) disturbance would be sufficient to cause a lowering, which technically would not be 'spontaneous.' " (Footnote omitted.)

The court then determined that there was "ample" evidence that there was no guard or safety mechanism to protect against contact with the head of the heat lamp. The court concluded: "With respect to the product liability claim . . . the jury was presented with sufficient evidence (lay and expert) that, combined with its own common sense and experience, was sufficient to support a finding that the [heat] lamp was defective, and that the defect caused the injuries to the plaintiff."

We begin by setting forth our standard of review and the relevant legal principles. Initially, we note that a "defendant must overcome a high threshold to prevail on either a motion for a directed verdict or a motion to set aside a judgment." (Internal quotation marks omitted.) *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 775, 83 A.3d 576 (2014). "A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [to deny the defendant's motion for a directed verdict] we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Demond* v. *Project Service, LLC*, 331 Conn. 816, 833, 208 A.3d 626 (2019);

see also *Bagley* v. *Adel Wiggins Group*, 327 Conn. 89, 102, 171 A.3d 432 (2017). The question of whether the evidence presented by the plaintiff was sufficient to withstand a motion for a directed verdict is a question of law, subject to plenary review by this court. *Pellet* v. *Keller Williams Realty Corp.*, 177 Conn. App. 42, 50, 172 A.3d 283 (2017); see also *Theodore* v. *Lifeline Systems Co.*, 173 Conn. App. 291, 307, 163 A.3d 654 (2017).[38]

Regarding a motion to set aside the verdict, the standard for appellate review is the abuse of discretion standard. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done. . . . [T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. . . . In reviewing the action of the trial court in denying [or granting a motion] . . . to set aside the verdict, our primary concern is to determine whether the court abused its discretion . . . ." (Internal quotation marks omitted.) *Rendahl* v. *Peluso*, 173 Conn. App. 66, 94–95, 162 A.3d 1 (2017); see also *Viking Construction, Inc.* v. *TMP Construction Group, LLC*, Conn. , , A.3d (2021).

We are mindful that "[t]his court has emphasized two additional points with respect to motions to set aside a verdict that are equally applicable to motions for a directed verdict: *First, the plaintiff in a civil matter is not required to prove his case beyond a reasonable doubt; a mere preponderance of the evidence is sufficient. Second, the well established standards compelling great deference to the historical function of the jury find their roots in the constitutional right to a trial by jury.* . . . This standard also requires the trial court to consider the evidence, including reasonable inferences, in the light most favorable to the plaintiff." (Citation omitted; emphasis added; internal quotation marks omitted.) *Pellet* v. *Keller Williams Realty Corp.*, supra, 177 Conn. App. 48–49.

The elements of a product liability action are well established. "In a products liability action, the plaintiff must plead and prove that the product was defective and that the defect was the proximate cause of the plaintiff's injuries. . . . A product is defective when it is unreasonably dangerous to the consumer or user. . . . The established rule in Connecticut is that [a] product may be defective because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities. . . . Under such circumstances, the failure to warn, by itself, constitutes a defect." (Cita-

tions omitted; internal quotation marks omitted.) *Battistoni* v. *Weatherking Products, Inc.*, 41 Conn. App. 555, 562, 676 A.2d 890 (1996); see also *Haesche* v. *Kissner*, 229 Conn. 213, 218, 640 A.2d 89 (1994).

WABBO has challenged only the causation element in its appeal. We note that "[*p*]*roof that a defect in the product caused the injury in controversy is a prerequisite to recovery for product-caused injury in every products liability case*, whether the action is grounded on negligence, breach of warranty, strict liability in tort . . . or a combination of such theories. . . . *Theodore* v. *Lifeline Systems Co.*, supra, 173 Conn. App. 308. When the causation issue involved goes beyond the field of ordinary knowledge and experience of judges and jurors, expert testimony is required." (Emphasis added; internal quotation marks omitted.) *Ferrari* v. *Johnson & Johnson, Inc.*, 190 Conn. App. 152, 162, 210 A.3d 115 (2019); see also *Sharp* v. *Wyatt, Inc.*, 31 Conn. App. 824, 833, 627 A.2d 1347 (1993) (plaintiff must plead and prove that defendant's product was defective and proximately caused injuries), aff'd, 230 Conn. 12, 644 A.2d 871 (1994); *Wierzbicki* v. *W.W. Grainger, Inc.*, 20 Conn. App. 332, 334, 566 A.2d 1369 (1989) (same).

Our courts have applied the following test for causation in cases involving a claim under our Product Liability Act. "The causation inquiry has two facets: (1) cause-in-fact; and (2) legal or proximate cause. These two components ask the following questions respectively: (1) whether the defendant's conduct was the cause-in-fact of the injury; and, if so; (2) whether as a matter of social policy the defendant should be held legally responsible for the injury. Proof of proximate cause requires proof of both cause-in-fact and legal cause. . . . 63 Am. Jur. 2d 55–58, Products Liability § 21 (2010). Cause-in-fact, also referred to as actual cause, asks whether there was a sufficiently close, actual, causal connection between the defendant's conduct and the actual damage suffered by the plaintiff. It requires that there be a direct causal connection between the negligence or product defect and the injury. That is, it refers to the physical connection between an act and an injury. . . . 63 Am. Jur. 2d, supra, § 24, p. 60." (Internal quotation marks omitted.) *Theodore* v. *Lifeline Systems Co.*, supra, 173 Conn. App. 308–309. "[*T*]*he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the* [*victim's*] *injuries*." (Emphasis added; internal quotation marks omitted.) *DeOliveira* v. *PMG Land Associates, L.P.*, 105 Conn. App. 369, 378, 939 A.2d 2 (2008); see also *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 433, 820 A.2d 258 (2003) (test for proximate cause is whether defendant's conduct is substantial factor in bringing about plaintiff's injuries); *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 178, 700 A.2d 38 (1997) (same).

A thorough review of the pleadings, evidence, closing

arguments, and jury charge establish that the plaintiff alleged and presented evidence of various means in which WABBO's defective product, the heat lamp, caused her injuries. In addition to the lowering of the arm holding the heat lamp, the plaintiff maintained that the lack of (1) a locking mechanism, (2) a safety guard, (3) a user manual, or (4) a warning regarding the propensity of the arm to lower each constituted a substantial factor, and thus proximately caused her injuries on April 22, 2010. In its appellate brief, WABBO focuses primarily on the question of how the heat lamp lowered onto the plaintiff's foot and whether there was evidence that this lowering occurred spontaneously or due to some outside force. WABBO summarily contends that the absence of a locking mechanism and the guard went to the issue of a defect and not causation.

Contrary to the bald assertion made by WABBO, we conclude, on the basis of our comprehensive review of the pleadings and evidence in this case, that the plaintiff presented to the jury alternative methods of causation and did not limit consideration of the causation element to how or why the arm of the heat lamp lowered. There was sufficient evidence in the court record for the jury to find that the lack of a safety guard over the heating element was a substantial factor, and thus a proximate cause, of the plaintiff's injuries to her left foot. WABBO did not submit jury interrogatories to specify which of the alternative bases of causation the jury used to reach its verdict.

In the present case, due to the lack of jury interrogatories, the only manner in which WABBO can prevail would be to establish that the evidence was insufficient to support any of the specifications of causation pursued by the plaintiff. See *Seven Oaks Enterprises, L.P.* v. *Devito*, 185 Conn. App. 534, 558–59, 198 A.3d 88, cert. denied, 330 Conn. 953, 197 A.3d 893 (2018); *Jackson* v. *H.N.S. Management Co.*, 109 Conn. App. 371, 372–73, 951 A.2d 701 (2008). It failed, however, to challenge the claims that the lack of a locking mechanism, safety guard, user manual or warning regarding the propensity of the arm of the heat lamp to lower was a substantial factor, and thus the proximate cause, of the burns suffered by the plaintiff. The failure to challenge these matters is fatal to WABBO's appeal. Accordingly, we conclude that the court properly denied WABBO's motions for a directed verdict and to set aside the verdict.

The judgment is reversed with respect to the medical malpractice claims against Wang and the Center for Women's Health, P.C., and the case is remanded with direction to render judgment dismissing those claims against them; the judgment with respect to the product liability claim is affirmed.

In this opinion the other judges concurred.

¹ As a result of this conclusion, we need not reach the other claims raised

by Wang and the Center in AC 42469 and AC 42493.

[2] The court, *Hon. Kenneth B. Povodator*, judge trial referee, issued a fifty-two page memorandum of decision on January 3, 2019, addressing various motions, including motions for permission to file a late motion to reargue and motions for reconsideration of the 2012 motions to dismiss, motions for directed verdict, motions to set aside the verdict, a motion for remittitur and a motion for judgment notwithstanding the verdict.

[3] Pursuant to a user brochure introduced into evidence, the heat lamp promoted metabolism, regulated physiological deficiencies, diminished inflammation and eased pain, tissue injuries, arthritis, and various skin conditions. This device contained a round plate coated with thirty-three elements and was activated by a built-in heating element. The mineral plate then emitted "a special band of electromagnetic waves" that were absorbed by the patient's body.

[4] "The action was commenced in April, 2012. In December of that year . . . Wang sought to implead [WABBO] the distributor of the heat lamp that caused the injury to the plaintiff . . . . After the motion was granted, and a third-party complaint served on [WABBO], the plaintiff amended her complaint so as to assert a direct claim against . . . [WABBO]. Early in the trial . . . Wang withdrew his complaint directed to . . . WABBO." See part II of this opinion.

[5] The heat lamp brochure introduced into evidence cautioned that the head of the heat lamp should not be touched during operation. It further instructed that the head of the lamp should be positioned eight to twelve inches away from the patient.

[6] The plaintiff was unaware of how the head of the heat lamp ended up on her foot. When Wang returned to the treatment room, "he did not notice or observe whether the lamp assembly had tipped over or whether the arm supporting the lamp head had descended."

[7] "[P]rofessional negligence or malpractice . . . [is] defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . Furthermore, malpractice presupposes some improper conduct in the treatment or operative skill [or] . . . the failure to exercise requisite medical skill." (Emphasis omitted; internal quotation marks omitted.) *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 576, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009).

[8] "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. . . . In a medical malpractice action, despite the allegations in the plaintiff's complaint, it is proper to consider undisputed facts contained in affidavits when deciding a motion to dismiss if the affidavits provide independent evidence of the nature of a defendant's medical practice. . . . Where . . . the motion [to dismiss] is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint. . . . Generally, [i]f affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . . As a general matter, the burden is placed on the defendant to disprove personal jurisdiction." (Citations omitted; internal quotation marks omitted.) *Carpenter* v. *Daar*, 199 Conn. App. 367, 381–82, 236 A.3d 239, cert. granted, 335 Conn. 962, 239 A.3d 1215 (2020).

In the event, however, that the motion to dismiss raises a factual question that is not determinable from the record, the plaintiff bears the burden of proof to present evidence to establish jurisdiction, and due process may require an evidentiary hearing. *LaPierre* v. *Mandell & Blau, M.D.'s, P.C.*, 202 Conn. App. 44, 49 n.3, 243 A.3d 816 (2020).

[9] General Statutes § 20-206aa (3) provides: " 'The practice of acupuncture' means the system of restoring and maintaining health by the classical and modern Oriental medicine principles and methods of assessment, treatment

and prevention of diseases, disorders and dysfunctions of the body, injury, pain and other conditions. 'The practice of acupuncture' includes:

(A) Assessment of body function, development of a comprehensive treatment plan and evaluation of treatment outcomes according to acupuncture and Oriental medicine theory;

(B) Modulation and restoration of normal function in and between the body's energetic and organ systems and biochemical, metabolic and circulation functions using stimulation of selected points by inserting needles, including, trigger point, subcutaneous and dry needling, and other methods consistent with accepted standards within the acupuncture and Oriental medicine profession;

(C) Promotion and maintenance of normal function in the body's energetic and organ systems and biochemical, metabolic and circulation functions by recommendation of Oriental dietary principles, including, use of herbal and other supplements, exercise and other self-treatment techniques according to Oriental medicine theory; and

(D) Other practices that are consistent with the recognized standards of the acupuncture and Oriental medicine profession and accepted by the National Certification Commission for Acupuncture and Oriental Medicine.''

See generally General Statutes § 20-206bb (setting forth licensing requirement for persons engaging in practice of acupuncture in Connecticut).

[10] The plaintiff alleged that she suffered third degree burns to her left foot and toes, a broken toe, an infection of a bone in her toe, permanent deformity and scarring of her left toes, foot and leg, permanent pain in her left foot, loss of sensation and numbness in her left toes and foot, and physiological, psychological, and neurological sequelae and required a five day admission to the burn unit of a New York hospital, multiple skin graft surgeries, and multiple debriding procedures.

[11] General Statutes § 52-184c (b) provides: "If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[12] General Statutes § 52-190a (a) provides: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. *To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion.* Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented

against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate." (Emphasis added.)

[13] Practice Book § 10-30 provides in relevant part: "(a) A motion to dismiss shall be used to assert . . . (2) lack of jurisdiction over the person . . . .

"(b) Any defendant, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ." The plaintiff does not dispute that the motion to dismiss filed by the Center and joined by Wang was timely.

[14] In its memorandum of law in support of the motion to dismiss, the Center argued: "The civil summons signed by [the] plaintiff's counsel contains the case code of T 28 which is the code for Medical Malpractice. Appended to the complaint is a document entitled 'Certificate,' which is signed by the plaintiff's attorney and which states in part, 'I . . . hereby certify that I have made reasonable inquiry, as permitted by the circumstances, to determine whether there are grounds for a good faith belief that there has been negligence in the case and treatment of the plaintiff . . . . This inquiry has given rise to a good faith belief on my part that grounds exist for an action against the defendants . . . .'" (Footnote omitted.)

[15] The opinion letter attached to the first amended complaint provided:
"OPINION
PURSUANT TO C.G.S., SECTION 52-190a

"Dear Mr. Lichtenstein:

"Thank you for asking me to review the case of Judith Kissel. As you know, I am a licensed acupuncturist. In my role as a licensed acupuncturist, I am familiar with the standard of care as it relates to the practice of acupuncture in the United States. At your request, I have read and reviewed the following medical records of Judith Kissel:

•Records from the Center for Women's Health

•Records from the Stamford Hospital

"Based upon my review of the medical records, it is my opinion that there was negligence in the care and treatment of Judith Kissel by Reed Wang, L.Ac on April 22, 2010 at the Center for Women's Health. The standard of care dictates that patients receiving acupuncture must be positioned a safe distance from any piece of equipment that has the potential to injure the patient. In addition, the patient needs to be appropriately monitored to ensure that the patient remains safe throughout the acupuncture procedure. In this case, Ms. Kissel's left foot was burned on a heat lamp while she was receiving acupuncture from Reed Wang, L.Ac. Mr. Wang was negligent in his placement and/or monitoring of Ms. Kissel during the acupuncture procedure. Mr. Wang's departure from the standard of care was a substantial factor in causing the thermal burn to Ms. Kissel's left foot.

"My opinion that there was negligence on the part of Mr. Wang is based upon my review of the medical records as well as my education, training, and experience. The opinion stated herein is based upon the information available to me at this time. Should other information and evidence become available, I reserve the right to supplement and/or amend this opinion." (Emphasis omitted.)

[16] The plaintiff attached a copy of a letter requesting the licensed acupuncturist to review the facts of this case. This letter provided in relevant part: "Thank you for agreeing to review this case. It involves a 52 y/o who scheduled her first acupuncture session with Dr. Reed Wang who provides his service at the OB/GYN office of Center for Women's Health in Stamford. During this session on April 22, 2010, a heat lamp was set up and Dr. Wang exited the room. At some point, this heat lamp fell onto Ms. Kissel's left foot. Dr. Wang and obstetrician, Dr. Joel Evans, took Ms. Kissel to Stamford ED where she was diagnosed with 3rd degree and 2nd degree burns to the left great toe as well as the dorsum aspect of the foot and the left second toe. She has had multiple surgeries and skin grafts as a result.

"The medical records are skimpy because Dr. Wang did not write a note in her chart pertaining to this incident. Only Dr. Evans made a notation after the fact. We are looking to you for comment on this incident and Dr. Wang's care and treatment as an acupuncturist.

"When you have completed your review, please call Attorney Joel Lichtenstein at your earliest convenience to discuss."

[17] The Center disputed, inter alia, that the opinion letter had existed prior to the commencement of the medical malpractice action and that the author of the opinion letter had been sent the plaintiff's medical records. The Center argued additionally that an evidentiary hearing was required to resolve the disputed facts set forth in the affidavit from the plaintiff's counsel and that the plaintiff could not amend her complaint to include the opinion letter.

[18] Specifically, the court quoted the following language from our decision: "Given the fallibility existing in the legal profession . . . it is possible that a written opinion of a similar health care provider, existing at the time of commencement of an action, might be omitted through inadvertence. In such a scenario, it certainly may be within the discretionary power of the trial judge to permit an amendment to attach the opinion, and, in so doing, deny a pending motion to dismiss. Such a discretionary action would not be at variance with the purpose of § 52-190a, to prevent groundless lawsuits against health care providers." (Footnote omitted.) *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 585.

[19] Wang, the Center, and WABBO filed a number of various postverdict motions that extended the appellate process.

[20] See, e.g., *Estela* v. *Bristol Hospital, Inc.*, 179 Conn. App. 196, 203–21, 180 A.3d 595 (2018) (discussing applicability of § 52-592).

[21] The court granted the motions for permission to file a second motion for reconsideration.

[22] Citing *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 705, Wang argues that this court should apply the plenary standard of review when considering a trial court's decision regarding a motion to dismiss. We note that our Supreme Court has stated that there is no meaningful distinction between plenary and de novo review and that it has used those terms interchangeably. *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 746 n.13, 826 A.2d 170 (2003); see also *Sherman* v. *Ronco*, 294 Conn. 548, 554 n.10, 985 A.2d 1042 (2010).

[23] General Statutes § 52-592 (a) provides: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

[24] See General Statutes § 52-128 and Practice Book § 10-59.

[25] Specifically, we stated: "The original opinion letter was authored by a board certified dermatologist, who did not claim to have any training or experience in cosmetic surgery, let alone a certification in plastic surgery or cosmetic surgery. Although the board certified dermatologist claimed to know the relevant standard of care and that [the defendant] breached that standard, this is not sufficient to meet the requirements of § 52-184c (c). . . . The plaintiff was required to obtain an opinion letter authored by a health care provider with experience and training in cosmetic surgery, and with board certification in cosmetic surgery or in a specialty requiring greater training and experience. Both of these requirements are missing from the original opinion letter." (Citation omitted.) *Gonzales* v. *Langdon*, supra, 161 Conn. App. 507.

[26] The plaintiff conceded that, based on the allegations set forth in his complaint, he was required to provide an opinion letter from a doctor trained and board certified in oral and maxillofacial surgery, and that the opinion letter attached to the complaint did not set forth these required details. *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 699.

[27] Specifically, we stated: "Although at this juncture it would seem prudent for a plaintiff to follow the corrective measures approved in *Gonzales*, we do not decide at this time whether a trial court has the authority to permit alternative procedures, such as the use of a clarifying affidavit, to remedy a defective opinion letter." *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 705 n.10.

In *Carpenter* v. *Daar*, 199 Conn. App. 367, 389–90, 236 A.3d 239, cert. granted, 335 Conn. 962, 239 A.3d 1215 (2020), we subsequently held that in the case of a defective opinion letter, a plaintiff must amend the complaint and not use a subsequently filed supplemental affidavit from the author of the opinion letter to cure said defect. Our Supreme Court granted certification in that case, limited to the following issue: "Did the Appellate Court properly uphold the trial court's dismissal of the plaintiff's medical malpractice action for failure to comply with . . . § 52-190a?" *Carpenter* v. *Daar*, 335 Conn. 962, 239 A.3d 1215 (2020).

[28] Six days later, the Center joined Wang's June 26, 2018 motion. In this motion, the Center argued that "[t]he issues as to the Center and . . . Wang are identical as to the same motion to dismiss and ruling applied to the Center. . . . The undersigned defendant does not seek to further brief or argue any of the issues and relies upon the motion that was filed by . . . Wang . . . and the oral argument that took place on the motion on September 6, 2018. To avoid inconsistent rulings between [Wang and the Center] who filed identical motions to dismiss and received the same ruling, the [Center] seeks to join this motion for reconsideration."

[29] Perhaps presciently, the court aptly noted: "There seems to be no identified impediment to the [Center and Wang] raising the issue on appeal—notwithstanding the earlier denial of the motions to dismiss, *Peters* is claimed to represent the current accurate state of the law, and no reason had been identified why it would not be applicable prior to final judgment in this case, if in fact that decision controls the jurisdictional issue first raised more than six years ago."

[30] For the purposes of our analysis, whether the opinion letter was missing from the complaint or was deficient in some other manner appears to constitute a distinction without a difference. Under both scenarios, the result is a defective letter pursuant to § 52-190a.

[31] The plaintiff does not argue that the judgment should be affirmed based on the reasoning utilized in the court's 2012 memorandum of decision—that is, the court had discretion to permit the plaintiff to amend the medical malpractice complaint to include the opinion letter because the opinion letter had been in existence at the time that the action was commenced.

[32] In *Torres* v. *Carrese*, supra, 149 Conn. App. 611 n.14, we mentioned that the court could not consider an opinion letter that had been obtained after the action had been commenced, after the motions to dismiss had been filed, and after the statute of limitations had expired. This reference to the statute of limitations is not the equivalent of the specific holding of *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 706, that efforts to cure a defect in an opinion letter must be initiated prior to the expiration of the statute of limitations.

[33] In the January 3, 2019 postverdict memorandum of decision, the court did not address the three year repose section of § 52-584. It did note, however, that the plaintiff's request to amend her complaint "was filed substantially more than two years after the date of the occurrence . . . [and that] [t]here is no claim that the corrective action taken by the plaintiff occurred prior to the expiration of the statute of limitations."

[34] On February 6, 2013, Wang filed a third-party complaint against WABBO. Approximately one month later, the plaintiff filed a third-party complaint against WABBO. At the start of the trial, Wang withdrew his action against WABBO.

[35] General Statutes § 52-572m (b) provides in relevant part: " 'Product liability claim' includes all claims or actions brought for personal injury . . . caused by the manufacture, construction, design . . . warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." See generally *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 799–800, 756 A.2d 237 (2000) (complaint set forth "classic allegations of product liability"); *Gajewski* v. *Pavelo*, 36 Conn. App. 601, 611, 652 A.2d 509 (1994) (noting that current statutory scheme intended to merge various common-law theories of product liability into one cause of action), aff'd, 236 Conn. 27, 670 A.2d 318 (1996).

[36] See, e.g., *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 174–75, 700 A.2d 38 (1997) (plaintiff filed product liability action alleging theories of strict liability for defective design, strict liability for failure to warn or instruct, negligent design, and negligent failure to warn or instruct).

[37] Practice Book § 16-37 provides: "Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case-in-chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his or her motion for a directed verdict within the aforesaid time after the jury has been discharged from consideration of the case. If a verdict was returned, the judicial authority may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned, the judicial authority may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

[38] In *Pellet* v. *Keller Williams Realty Corp.*, supra, 177 Conn. App. 42, we noted that some of our decisions had applied the abuse of discretion standard when reviewing the granting of a motion for a directed verdict. "[A] line of cases out of this court has stated that we review a trial court's granting of a motion for a directed verdict for an abuse of discretion. . . . In tracing the origins of this assertion, it is clear that this standard improperly became conflated at one point with the standard of review for challenges to the grant or denial of motions to set aside a verdict. . . . In any event, because we are bound by the precedent of our Supreme Court as the ultimate arbiter of state law; see *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010); we apply the standard of review that it has held proper for a challenge to a trial court's granting of a motion for a directed verdict. That standard is plenary. See, e.g., *Curran* v. *Kroll*, [303 Conn. 845, 855, 37 A.3d 700 (2012)]." (Citations omitted.) *Pellet* v. *Keller Williams Realty Corp.*, supra, 50 n.9.

---